WHEELER v. OCKER & FORD MANUFACTURING CO.

1. CORPORATIONS—STOCK AND STOCKHOLDERS—SUBSCRIPTION.
    Subscriptions to capital stock must be for a definite number of shares.

2. SAME—CONTRACTS—EMPLOYMENT.
    A contract to employ a corporate manager to be paid a salary up to a specified sum in cash, the balance in corporate stock, is not a stock subscription or a sale of the stock.

3. SAME—CONTRACTS—BREACH.
    Under such contract, the corporation has the option to pay in stock or in cash up to the time payment is due; thereafter the obligation becomes one to pay in cash.

4. SAME—TRUST MORTGAGES—ASSIGNMENT FOR BENEFIT OF CREDITORS.
    Trust mortgages, conveying all the property of a corporation in trust for the benefit of creditors, amount to an assignment for that purpose.

5. EQUITY—TRUSTS—ENFORCEMENT.
    The jurisdiction of equity to enforce trusts of real or personal property is well established.

6. SAME—ADEQUATE REMEDY AT LAW.

The remedy at law is not adequate as between the creditor under a contract to pay for part of his services and trustees for creditors, since the court of law could not compel the trustees to recognize complainant's claim.

7. SAME—PARTIES.

The corporation is a proper party defendant to a bill to require the trustees to recognize the creditor's rights, since it has an interest in the surplus or residue of the trust fund.

8. SAME—MULTIFARIOUSNESS.

A bill in equity is not multifarious for adding to an equitable cause of action a claim in which there is no equity, and which may be treated as surplusage.

9. SAME—TRUSTS—ADMINISTRATION.

Where trust mortgages given by a corporation of its business and property do not authorize the trustees to continue the business or hire a manager, they are not authorized to employ the services of a manager for that purpose.

Appeal from the superior court of Grand Rapids; Stuart, J. Submitted April 19, 1910. ( Docket No. 110.) Decided July 14, 1910.

Bill by Charles E. Wheeler against the Ocker & Ford Manufacturing Company, and Henry G. Dykhouse, John Jungbaecker and Robert H. Sherwood, trustees for the benefit of the creditors of said company, to establish a claim as creditor of the corporation and of the trustees. From a decree sustaining a demurrer to the bill, complainant appeals. Reversed.

*Cleland, Heald & Montgomery*, for complainant.

*Gleason & Lee* and *H. A. McNitt*, for defendants.

By his bill of complaint in this cause, the complainant states: That the defendant the Ocker & Ford Manufacturing Company, a corporation duly organized and existing under the laws of this State, having its principal office at the city of Grand Rapids, prior to the 11th day of October, 1906, was desirous of obtaining the services of the complainant as the manager of its plant in said city, and

some negotiations were had to that end by the parties; that on October 11, 1906, the board of directors of said company met at the office of its president, for the purpose of entering into a contract with complainant to act as its manager; that complainant then and there offered to act as such manager at a salary of $250 per month; that the board of directors there stated to complainant that the said company could not pay $250 per month in cash, but that it would be willing to pay $150 per month in cash, and $100 per month in stock; that complainant then stated that he would be willing to receive a portion of his salary in stock, but that he was wholly ignorant of the value of the stock, and that the only arrangement under which he would consent to take stock was that he was to receive: *First,* $150 cash per month; *second,* $100 per month in an amount of stock actually worth $100; that this offer was accepted by said board of directors at said meeting, and that in furtherance of said agreement the following resolution was unanimously passed by said board of directors:

"Resolved that Mr. Charles E. Wheeler be employed by the Ocker & Ford Manufacturing Company as manager for six months from October 15, 1906, at a monthly salary of one hundred fifty dollars cash, and one hundred dollars book value of the stock of the company. Subject to termination of contract at any time upon two weeks' notice."

Complainant accepted said offer of employment, and on October 15, 1906, entered upon his duties as said manager, and faithfully performed his said duties during the entire six months following; and on April 16, 1907, the board of directors of said company passed the following motion:

"That Mr. Wheeler be employed for the next three months at the same terms and conditions of his contract of October 15, 1906."

It is further averred that he accepted said offer and continued in the employ of said company during the three months next ensuing under said contract; that during all

of the time of such employment the said company paid to complainant $150 in cash each month; but it never paid him stock of the value of $100 per month, nor any stock whatsoever, and that complainant has never received from said company any of the stock which it agreed to pay him, nor any stock; that he is not now and never was a stockholder in the said company, and that he has never acted as such stockholder, nor exercised any of the rights of such stockholder; that said company has never offered or tendered to complainant stock of the book value of $100 per month, nor any stock whatsoever; that on June 10, 1907, said company was in debt to a large amount, and found that it was unable to pay its said debts at maturity, and that some of its creditors were demanding that they be paid or secured at once; that at that time none of the creditors of said company was secured, except the Michigan Millers' Mutual Fire Insurance Company, which held, and still holds, a mortgage for $4,500 on some of the real estate of said company; that for the purpose of securing the creditors at that time unsecured, including complainant, said company on said June 10, 1907, executed two certain mortgages to the other defendants herein, as trustees; one on all of the personal property then owned by said company, and one on all of the real estate owned by it, copies of which mortgages are attached to said bill as exhibits; that both mortgages refer to a certain agreement of even date made between said company and said other defendants, as trustees, a copy of which agreement is attached to said bill, and is made a part thereof; that in accordance with said agreement a certain schedule, purporting to contain a list of all the creditors of said company, was made and delivered to said trustees; that the claim of complainant was not listed in said schedule; that said mortgages were duly filed for record on June 13, 1907, and thereupon the said trustees took possession of the property of said company, under said mortgages, and have ever since held possession of the same; that on July 16, 1907,

the said trustees, being in possession of the property of said company as aforesaid, entered into an agreement with complainant, by which he was to continue to act as manager of said company, upon the same terms and conditions, at a monthly salary of $250; that in pursuance of said contract complainant faithfully performed his duties as said manager under said trustees, from July 16, 1907, until September 1, 1907; that during said time complainant was paid $150 per month, but that the remaining $100 per month was never paid to him, nor tendered to him by said trustees, nor by said company; that said trustees, upon taking possession of said property, proceeded to sell out the property of said company, under the terms of the mortgage, and have paid dividends on certain of the indebtedness secured under the mortgage, the amount of which is unknown to complainant; but he avers that a dividend of 40 per cent. was paid on certain of the indebtedness secured under the mortgage, and that said trustees still have on hand all, or nearly all, of the real estate of said company and some of the personal property, the amount of which is unknown to complainant; that complainant has frequently demanded of said trustees that they recognize complainant's claim and pay to him the same dividends that they have paid to other creditors secured under the mortgage; but they have refused to recognize the claim of complainant, or to pay him such dividends, or anything on the said claim; that even if complainant obtained a judgment at law against said company, there would be no property upon which an execution could be levied; that unless the said trustees are restrained from paying out the entire amount received from the sale of said property, and are required to keep on hand sufficient to pay a dividend to complainant, he will lose the entire amount of his said claim; that he has no remedy except in a court of equity to determine that his claim is secured under the mortgage, and to require said trustees to recognize his claim as secured thereunder, and to pay him

the same dividends thereon that other creditors of said company, under said mortgage, are paid.

The bill prays that complainant's claim may be decreed to be secured by the terms of said mortgages, and that said trustees be required to recognize the same, and to pay him the same dividend on his claim, as is paid to the creditors, and for an injunction.

The trustees demurred to said bill upon the following grounds:

(1) That complainant by his bill shows that he became a stockholder of said company, and therefore is not entitled to the benefits of the trust deeds.

(2) That complainant does not show any refusal on the part of said company, or other defendants, to deliver to him certificates of stock earned under said agreement; nor does he allege such breach of contract as makes him a creditor of said company.

After the filing of this demurrer, complainant amended his bill by alleging, as hereinbefore set forth, that he is not, and never was, a stockholder in said company, and never acted as such. Thereupon said trustees filed a demurrer to said bill as amended, upon the same grounds as stated in the demurrer to the original bill, and:

(3) That complainant has an adequate remedy at law.

(4) That said trustees were not parties to, nor interested in, any of the salary contracts made with said company, and that they are improperly joined in this suit with said corporation.

(5) That said bill seeks relief upon separate contracts, between different parties, having no common interest, and is multifarious.

The defendant corporation also demurred to said bill, upon substantially the same grounds urged by said trustees, with the additional reason that complainant prayed for no relief against said company, and no cause of action is stated against it.

The court sustained said demurrers and finally dismissed the bill, and the complainant has appealed.

STONE, J. (*after stating the facts*).  1. Did the Complainant by the Terms of the Contract of Employment Become a Stockholder of the Defendant Corporation ?

The same legal principles govern with regard to the elements of a contract for the sale of stock, as apply in the case of contracts generally.  It is a general rule that subscriptions to capital stock must be for a definite number of shares.  *Peninsular R. Co.* v. *Duncan*, 28 Mich. 130; 1 Cook on Corporations (6th Ed.), § 10; 10 Cyc. pp. 380, 381, 390.  In *Bostwick* v. *Young*, 118 App. Div. 490 (103 N. Y. Supp. 607), it was held that a railroad construction contract, by which work is paid for by stocks and bonds, is not a stock subscription nor a sale of the stock, but is merely a contract. 1 Cook on Corporations (6th Ed.), § 22.

2. Should Complainant have Demanded the Stock, or Was it the Duty of the Company to Tender it ?

It should be borne in mind that this is not a case where complainant is seeking to rescind a contract and recover the consideration paid.  It is rather a case where he seeks to recover upon the contract; the defendant having failed to tender performance by payment, or offer of stock. We think the case falls within the general rule that, wherever a contract provides for the payment of a given amount in a commodity, the payor has the option to pay in that commodity, or in cash up to, and including, the time payment is due; but, upon failure to pay in the commodity on that date, the obligation becomes one to pay cash.  See discussion of this subject in 2 Mechem on Sales, § 1439, *et seq.*, and authorities there cited, including case of *Crowl* v. *Goodenberger*, 112 Mich. 683 (71 N. W. 485).  Manifestly, this stock was due complainant at the close of each month, as earned.  It has been held that, even in case of subscriptions for stock payable in property or labor, the same are not subject to calls, and a demand for the property or labor must be made by the corporation.  But upon failure of the subscriber to furnish the property or labor when due, such subscription becomes payable in cash.  Here complainant had fully

performed on his part; but, the company having failed to tender the stock when due, the obligation became one to pay in cash.

3. Has a Court of Equity Jurisdiction, or Has Complainant an Adequate Remedy at Law ?

The defendant company here sought to dispose of all of its property, real and personal, to pay all of its creditors. There is authority in this State which holds that such a disposition of property amounts to an assignment for the benefit of creditors. See *Charles Maloney & Co.* v. *Gonhue*, 152 Mich. 325 (116 N. W. 436), for a review of the cases. If that is the condition, then by express provision of the statute (section 9549, 3 Comp. Laws) chancery has jurisdiction of all questions and disputes arising under the assignment. Without question, there is here a trust relation between the trustee defendants and a creditor. The complainant asserts by his bill that he is a creditor of the corporation, and that his name should have been included in the list of creditors, but that it has been omitted. He asks that he be decreed to be a creditor, and entitled to the benefits conferred by said mortgages. The jurisdiction of a court of equity to enforce trusts, and to decree the execution of trusts, even as to personalty, is well established. 22 Enc. Pl. & Prac. pp. 9, 14, 15; 1 Pomeroy's Equity Jurisprudence (3d Ed.), §§ 62, 182; *Ledyard's Appeal*, 51 Mich. 623 (17 N. W. 208). Neither do we think that the remedy at law, as pointed out by defendants, is an adequate one. While complainant might recover a money judgment in a suit at law, that court would have no power to compel the trustees to give to complainant the benefit under the mortgages, to which he would be entitled, and he might be compelled to invoke the power of equity to enforce his rights.

4. Is the Bill Multifarious ?

Complainant seeks to enforce his alleged rights under a contract made with the defendant corporation. The mortgages both recognize that if, after the payment of all debts and expenses, any surplus or residue remains, it shall belong to and be returned to said company. We

think that the corporation is therefore a proper party, and the prayer for general relief would enable the court to enter a proper decree against it. Primarily, the object of the bill is to establish complainant's alleged rights as a creditor of the corporation and to compel the trustees to recognize and deal with such rights. There can be no question, therefore, that the trustees are proper parties. Incidentally, complainant asks that the trustees pay him for services rendered by him to them, in their trust capacity, in the course of administering the trust. There was nothing in the mortgages, nor in the accompanying agreement, either authorizing or permitting the trustees to continue the business, or hire a manager. The alleged claim against the trustees for services under the agreement of July 16, 1907, did not, therefore, arise under the aforesaid instruments, or either of them. While it may be that for these services complainant can apply to the chancery side of the court for relief, independently of this suit, he cannot have relief here. But mere surplusage will not render a bill multifarious, and therefore a bill is not rendered multifarious if, in addition to stating a case for equitable relief, it contains allegations with reference to another matter, but insufficient to entitle complainant to relief with reference thereto. 16 Cyc. p. 241; *Hammond* v. *Michigan State Bank*, Walk. Ch. (Mich.) 214; *Stone* v. *Railroad Co.*, 139 Mich. 265 (102 N. W. 752); 14 Enc. Pl. & Prac. p. 205. Therefore a bill is not multifarious for adding to an equitable cause of action matter in which there is no equity. Id.; 1 Daniel's Chancery Pl. & Prac. p. 346, and note.

The demurrers should have been overruled.

The decree of the superior court will be reversed, and the case remanded for further proceedings. The defendants should be permitted to answer within 30 days after said cause is remitted to the court below; the case then to proceed under the rules of court. The complainant will recover his costs in this court.

OSTRANDER, HOOKER, MOORE, and BLAIR, JJ., concurred.