FITZ GERALD v. CITY OF BIG RAPIDS.[1]

1. REAL PROPERTY—SUSPENSION OF POWER OF ALIENATION.
   Under 3 Comp. Laws 1897, §§ 8796, 8797, prohibiting the sus-
   pension of the absolute power of alienation for a longer period
   than the continuance of two lives in being, any suspension of
   the power of alienation not based on lives in being is void.

2. SAME—WILLS—CONDITIONAL DEVISE.
   A direction in a will that the executor should convey certain
   property to a city if the city would agree to maintain a free
   public library thereon, but, in case the city should refuse to
   accept the grant, that he should sell the property, and pay over
   the proceeds to specified legatees, is not void as suspending the
   power of alienation, since the joint action of the city and the
   executor would at any time be effectual to convey an absolute
   fee.

3. SAME—EXECUTORS—DISCRETIONARY POWER OF SALE.
   A provision in a will authorizing the executor, at his discretion,
   to defer for three years the exercise of a power given by
   the will to sell the real estate, but in no way restricting his
   right to sell at once, does not constitute a suspension of the
   power of alienation.

4. SAME.
   The fact that an executor was required to satisfy debts
   against the estate, and to determine as to alterations of
   property belonging thereto, before conveying the same, was
   not a suspension of the power of alienation.

Appeal from Mecosta; Palmer, J.   Submitted January
9, 1900.   Decided March 13, 1900.

Bill by John C. Fitz Gerald, executor of the last will
and testament of Harriet C. Phelps, deceased, against the
city of Big Rapids, Alice A. Wellman, and others, to
obtain a construction of said will.   From a decree in
favor of defendant city, the other defendants appeal.
Affirmed.

[1] Rehearing denied May 18, 1900.

*Edmund D. Barry* (*Francis A. Stace*, of counsel), for complainant.

*Joseph Barton*, City Attorney, and *M. Brown*, for defendant city.

*Rood & Hindman*, for appellants.

Montgomery, C. J. This is a bill filed to obtain a construction of the will of Harriet C. Phelps, deceased. The principal question arises over the eleventh clause of the will, which reads as follows:

" All the rest, residue, and remainder of my estate, except the house and grounds on which I now reside, and known as my homestead (the same being a lot of land one hundred and fifty feet square, on the northeast corner of Elm street and Stewart avenue, and bounded on the south by Elm street and on the west by Stewart avenue, in the city of Big Rapids, Michigan), I order and direct my executor to sell and convert into money or interest-bearing securities, and then, if the city of Big Rapids will, in due and legal form, agree to accept the same upon the terms and conditions herein expressed, and in such form and manner and substance as shall meet the approval of my executor, to expend upon the buildings upon said lot, and putting such other buildings thereon as shall be necessary in his opinion, a sufficient amount to properly accommodate and maintain, as to room, a public library thereon, and out of the balance of said funds to purchase a library, at an expense of such sum as he shall deem best, but not exceeding two-thirds of the balance of the money then remaining in his hands; and the remainder of said money he shall invest in interest-bearing securities, and the income arising therefrom, after paying all costs and charges, shall be paid to said city, to be used by it in the purchasing and keeping up new books for said library, and for no other purpose; and upon the completing of the repairs, changing of said buildings, and the building additional buildings, if necessary, and after and upon the said city of Big Rapids agreeing to accept the same, and to forever thereafter maintain a free public library thereon, to be known as the 'Phelps Free Library,' to keep the buildings insured, as well as the library, for at least three-fourths of their value, and, in case of destruc-

tion or injury by fire or otherwise, that the said city will, within two years thereafter, rebuild or repair such buildings, and purchase and place therein a library of as much value as the one destroyed, and costing at least as much as they are to have the same insured therefor,—then, and upon such conditions, I direct my said executor to convey to said city the premises above described, and the library therein so purchased as aforesaid.

"Said conveyance to said city is to expressly provide that said premises are to be forever used for the purpose of maintaining such free public library thereon, and for no other purpose whatever; and should the same be used for any other purpose, or should the city cease to use the same for said purpose for the term of three years consecutively, then the same shall revert to and become the property of the legatees named in the fifth section of this will, as well as the income of said fund above expressed. Should said city not agree to accept said provisions and trust, and should it not accept the same, as above provided, as to terms and conditions, then it is my will, and I order and direct my said executor to sell the said premises, and the proceeds thereof, and said fund, as well as all the rest and remainder of my estate, to pay over to the legatees named in the fifth section above, in proportion that their respective legacies bear to the whole amount of such sum."

The residuary legatees contend that this clause is invalid, as in contravention of sections 8796 and 8797, 3 Comp. Laws 1897, which prohibit the suspension of the absolute power of alienation for a longer period than during the continuance of two lives in being.  It is correctly stated by the learned counsel for the appellants that any suspension of the power of alienation not based on lives in being is invalid.  *State* v. *Holmes,* 115 Mich. 456 (73 N. W. 548).  But the question remains whether there is a restraint on the power of alienation.  The statute (section 8796) declares that such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed.  It has been frequently held that if there are in existence persons who, by joining in a conveyance or by successive releases, are able to pass the whole estate, the requirements of the statute are met.

Under the terms of the clause quoted, all that stands in the way of a conveyance by the executor is the contingency that the city of Big Rapids might elect to take under the will; but if, on the other hand, the city should decline to take, or should grant its right to take, can there be any doubt that a conveyance by the executor would pass a complete title, or that these two acts ( *i. e.*, the conveyance by the trustee and the release by the city) might take place at any time?

It is to be noted that the city is not declared a trustee, but is simply to take a conveyance on condition subsequent, which is that, if the city ceases to use the premises devised for the purpose of a library for the term of three years, they shall revert to certain legatees named. The cases upon which counsel chiefly rely are *Rose* v. *Rose*, 4 Abb. Dec. 108; *Yates* v. *Yates*, 9 Barb. 347. In *Yates* v. *Yates*, the devise was to a school not in existence, and was postponed until the legatee should accept the devise. In *Rose* v. *Rose*, likewise, the bequest was to an association which took when certain conditions (among them, the raising of a fund of $300,000) were performed. In neither case was there any one in existence who could have joined with the executor or trustee in making a conveyance. In the present case the city might at once release its right under the will, or it might decline to take, and in either case a complete conveyance could be made by the trustee. Chapl. Susp. Alien. §§ 283, 284.

But in another view there was no suspension of the power of alienation. True, the will contains the following provisions:

"I hereby give to my said executor, as well as trustee, full power and authority to sell and dispose of all my property at public or private sale, and upon such terms and conditions, and for such prices, as he shall consider best, and to invest and reinvest the proceeds thereof as in his judgment is best; and he shall not be obliged to pay any of the legacies aforesaid until the expiration of three years from the time of the probate of this will, and said legacies shall not draw interest, unless, in the opinion of my

said executor, interest has been realized from the money which would go to pay the same. But the payment of such legacies, or any of them, may be, at the option of my executor, made at an earlier date. The foregoing provision as to payment of legacies shall not be construed as governing the time in which said library shall be provided, built, and purchased. That shall be done in such time after said legacies are paid as the property to create said fund can, in the opinion of my said executor, be converted into cash or interest-bearing securities without sacrifice or loss, and the fund put in condition so that the total amount thereof shall be known."

But there is no provision which prohibits the executor from proceeding within three years or at once. As was said in *Robert* v. *Corning*, 89 N. Y. 225, the power of sale was not suspended by the discretion given by the will. The executor could sell and convey the land at any time and give a perfect title.

It is argued by counsel for the appellants that the power of alienation was suspended, because, before conveying to the city, the trustee or executor must first satisfy the debts against the estate and the legacies under the will, and determine about the alteration of the homestead; but, if such provisions are to be held an unlawful restraint on alienation, there could be no such thing as a power under a will, as the estate devised is in all cases subject to the charges of debts and legacies. Such delays are not within the reason of the statute. *Manice* v. *Manice*, 43 N. Y. 303; *Robert* v. *Corning*, 89 N. Y. 238.

It is claimed by counsel for the appellants that the decree is so framed as to affect the rights of the appellants in another case. If this can be made clear to us on settlement of the decree, the decree in this court will be so modified as to protect the rights of all parties.

The complainant will be entitled to a reasonable allowance out of the funds of the estate for the expense of appearance in this court. The city of Big Rapids will recover of the appellants its costs, to be taxed.

The other Justices concurred.